HOMER C. MYERS, Appellee, v. GEORGE H. WATSON, Appellant.

**ORIGINAL NOTICE:** **Validity—Abuse of Process.** The fact that a tenant's creditor is present at a public sale of the tenant's property and threatens to levy an attachment on said property does not constitute such abuse of process as will invalidate a check given by the landlord to the creditor in payment of his claim and to prevent such levy.

Headnote 1: 13 C. J. p. 400.

Headnote 1: 1 R. C. L. 104.

*Appeal from Woodbury District Court.*—MILES W. NEWBY, Judge.

OCTOBER 25, 1927.

Action by indorsee of a check to recover the amount due thereon, with protest fees and costs, against the drawer of the check. The trial court directed a verdict in behalf of the plaintiff, and the defendant appeals.—*Affirmed.*

*Naglestad, Pizey & Johnson,* for appellant.

*O. S. Thomas* and *Griffin, Griffin & Griffin,* for appellee.

FAVILLE, J.—Appellant is the owner of a certain farm in Lyon County. One Hunter was a tenant on said farm, and had been such tenant for ten years. Hunter was indebted to one Ladd on account. Hunter had advertised a public auction to be held on said farm, for the purpose of disposing of all the personal property which he had on said premises. Appellant was in attendance at said sale. The day before said sale, Ladd commenced an action against Hunter, and caused an attachment

to issue. The sheriff levied the same upon certain machinery belonging to Hunter. Notices were served, and the attachment was released. The appellee was attorney for Ladd in said action, and on the day of the sale, caused a second writ of attachment to issue, and accompanied the sheriff to the farm of the ·appellant, prior to the commencement of the sale. The sheriff was about to levy said attachment upon the personal property of Hunter, when the appellant protested to the appellee that the levy of said writ of attachment would spoil the sale, and proposed to the appellee that he would deposit the amount due on Ladd's claim in a bank, to be held until the matter of the rights of the parties could be adjusted in court. This, appellee refused to do, and insisted upon the sheriff's levying the attachment upon the property of Hunter. To prevent such levy, the appellant executed and delivered the check in question, which was made payable to the sheriff, and was for the amount of the Ladd claim. The sheriff indorsed said check to the appellee, who deposited the same in a bank for collection and credit. After executing said check, the appellee wired the payee bank, and stopped payment thereon. This action is brought to recover the amount of said check, with protest fees.

No serious question is raised with regard to the right of the appellee to maintain this action, as indorsee of said check. The sole question for our determination is whether or not the check was issued under such circumstances as that the same was procured by duress of property. There may be such illegal, unlawful, extortionate, oppressive, or malicious abuse of process as to constitute duress of property. *Foote v. De Poy,* 126 Iowa 366; *Callendar Sav. Bank v. Loos,* 142 Iowa 1; *Dennis v. Harris,* 179 Iowa 121; *Pembroke v. Hayes,* 114 Iowa 576; *Davidson v. Bradford,* 203 Iowa 207.

In *Foote v. De Poy,* supra, we said:

"It has also been held that duress of property is a good plea to an action on a bond given under hard and pressing circumstances to secure the release of property seized in attachment proceedings oppressively instituted or conducted. [Citing many cases.]"

Appellant claimed to have a superior and prior lien on the property in question, by virtue of the fact that he was the landlord of the premises occupied by Hunter, and that the rent was

in arrears. The evidence shows that Hunter had been in possession of the premises as a tenant for a period of ten years, and was owing the appellant rent to the amount of $6,000. How much of the rent, if any, had accumulated within the period for which the appellant could claim a landlord's lien, does not appear in the record. The appellant's contention is that he was claiming a landlord's lien on all the property of the tenant for the rent. Whether or not he in fact had a lien is only to be gathered from the inference from his statement that Hunter had been his tenant for ten years, was owing him $6,000 of rent, and that the appellant was "claiming" a lien on all of the property. The appellee had a perfect right to levy the attachment upon the property of Ladd's debtor, Hunter. If the appellant in fact had a superior lien upon said property by virtue of a landlord's lien, it could be asserted in a proper legal proceeding. There was no abuse of legal process on the part of the appellee, nor any threat to do any act or thing that the appellee did not have a perfect right to do. The property of Hunter was subject to attachment at the instance of Ladd. If said attachment was wrongful, Hunter had his complete redress by action on the attachment bond. If the appellant in fact had a superior lien upon the property, he could procure the discharge of the attachment in the manner pointed out by statute. The mere fact that the appellee, acting for Ladd, took advantage of the situation, and was about to levy the writ at the apparently opportune time just preceding the auction sale of Hunter's property, did not of itself constitute such duress as rendered the contract between the appellant and the appellee void and unenforcible. The appellant no doubt was interested in having the auction sale proceed, rather than to have it stopped by writ of attachment or postponed until a later date. Under these circumstances, he saw fit to execute the check in question. There was no coercion, compulsion, or putting in fear, within the meaning of the law. There was no such duress of property, under the proven facts, as justified the court in submitting that question to the jury. A verdict finding that there was such duress as to vitiate the check in question would not have support in the evidence, and could not have been upheld by the court. It therefore follows that the court did not err in directing a verdict in behalf of the appellee.

In *Dickerman v. Lord & Smith*, 21 Iowa 338, we said:

"To justify recovering back money paid, when all the facts were known to the party paying, such payment must not have been simply an unwilling payment, but a compulsory one, and the compulsion must have been illegal, unjust, or oppressive."

In *Paulson v. Barger*, 132 Iowa 547, we said:

"It is the general rule in this state, as well as elsewhere, that money voluntarily paid cannot be recovered back. The disagreement among the courts has been in the application of this rule to particular cases, rather than as to the rule itself. It has long been the rule in this state that a mere threat to begin a civil suit to recover on contract, and to attach property in aid of such suit, does not constitute such duress as to make a payment made on account thereof an involuntary one; and such seems to be the rule in most of the other jurisdictions. *Dickerman v. Lord*, 21 Iowa 338; *Weaver v. Stacey*, 93 Iowa 690; *King v. Williams*, 65 Iowa 167; *James and Haverstock v. Dalbey*, 107 Iowa 466."

The judgment appealed from is—*Affirmed*.

EVANS, C. J., and STEVENS, MORLING, KINDIG, and WAGNER, JJ., concur.